UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCUS R. DEAL,

    Plaintiff,

v.                                                      Case No. 3:21cv3547-MCR-HTC

G. PUGH, et al.,

    Defendants.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Plaintiff Marcus R. Deal, proceeding *pro se* and *in forma pauperis*, filed this suit under 42 U.S.C. § 1983 alleging Defendants violated his Eighth Amendment right against cruel and unusual punishment by using excessive force. Defendants have filed a motion to dismiss arguing Plaintiff failed to exhaust his administrative remedies (ECF Doc. 22) and Plaintiff responded in opposition (ECF Doc. 24). The motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties' submissions and the relevant law, the undersigned recommends Defendants' motion to dismiss (ECF Doc. 22) be GRANTED IN PART. As set forth below, the undersigned agrees with Defendants that Plaintiff has not exhausted his Eighth Amendment claim arising out

of the October 2021 use of force incident, but finds Plaintiff has exhausted that claim as it relates to the July 2021 incident.

## I.    BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC") currently incarcerated at Santa Rosa Correctional Institution ("Santa Rosa CI"), files this suit against Defendants Pugh, Burdett, and Streit for violations of the Eighth Amendment. The complaint sets forth the factual allegations that follow, the truth of which are accepted for purposes of determining Defendants' motion to dismiss. ECF Doc. 1.

On July 19, 2021, during a cell extraction led by Sgt. Pugh, Pugh grabbed Plaintiff's left hand pinky finger and "snapped it, thereby breaking the bones." *Id*. Plaintiff also alleges he was beaten with closed fists in the head and face "excessively over and over again." *Id.* Plaintiff, however, does not identify whether he was hit by Pugh or other unnamed officers. Although Plaintiff alleges his finger was broken, he also alleges he never received the x-rays that were taken after the incident. Regardless, Plaintiff alleges Sgt. Pugh "re-broke/re-snapped" Plaintiff's left pinky finger in a second "unprovoked and uncalled for cell extraction" that occurred on October 12, 2021, "which is the cell extraction and excessive use of force the Plaintiff is now initiating suit for." *Id.* at 5.

According to Plaintiff, on October 12, between the hours of 12:30 to 2:30 pm, a Lieutenant "conducted an unprovoked, illegal, unlawful, and unjustifiable CIT upon Plaintiff." *Id.* at 6. Although Plaintiff was complying with orders, the Lieutenant ordered the cell extraction team to form up and commence a cell extraction due to Plaintiff's failure to comply. *Id.* Upon rolling open Plaintiff's cell, Sgt. Pugh, Officer Burdett, and Officer Streit entered. *Id.* Sgt. Pugh struck Plaintiff down with his shield and subsequently beat Plaintiff while he was noncombative. *Id.* Officer Burdett used leg irons around his fists as brass knuckles to beat Plaintiff's head. *Id.* Officer Streit grabbed Plaintiff's head and bashed his face into the concrete floor. *Id.* at 7. Thereafter, Sgt. Pugh grabbed Plaintiff's deformed pinky finger and broke it again, causing Plaintiff to lose consciousness. *Id.*

Immediately following the cell extraction, another inmate observed an orderly mopping up Plaintiff's blood to conceal the physical evidence left behind from the beating. *Id.* at 10. Plaintiff also alleges before the cell extraction occurred, Lieutenant White and Sgt. Pugh ordered the camera operator to use the stairs to block the CIT.

## II.  EXHAUSTION REQUIREMENT

Under 28 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under … [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." *Chandler v. Crosby*, 397 F.3d 1278, 1286 (11th Cir. 2004). Exhaustion of all available remedies is a mandatory prerequisite to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Additionally, the PLRA requires "proper exhaustion" as set forth in the applicable administrative rules and procedures of the institution, so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 94-94 (2006); *see also id.* at 95 ("[T]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). Thus, "exhaustion is mandatory . . . and unexhausted claims cannot be brought." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017).

The applicable administrative rules here are those promulgated by the FDOC. The FDOC provides a grievance procedure and a set of requirements for its inmates, which is codified in the Florida Administrative Code. The grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

Case No. 3:21cv3547-MCR-HTC

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. "Failure to exhaust is an affirmative defense under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Abram v. Leu*, 759 F. App'x 856, 860 (11th Cir. 2019) (PLRA Exhaustion is an affirmative defense) (per curiam) (citing *Jones*, 549 U.S. at 216). However, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." *Id.* Due to it being an affirmative defense, Defendants bear the burden of proving Plaintiff has failed to exhaust his available administrative remedies. *See Jones*, 549 U.S. at 216.

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter of abatement under Fed. R. Civ. P. 12, and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d at 1374, 1376. Consequently, a district court may properly consider "facts outside of the pleadings to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.*

When deciding a motion to dismiss for failure to exhaust administrative remedies, the court must apply the two-step analysis established in *Turner v.*

*Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  The court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* at 1082 (citation omitted).  "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id*. at 1082.

### III.     DISCUSSION

As set forth above, Plaintiff references two (2) use of force incidents in the complaint, one occurring in July and one in October.  It is unclear whether Plaintiff seeks to recover as to both incidents or whether the July incident is merely background information.  Notably, Plaintiff provides only minimal information regarding the July incident and appears to seek damages for injuries allegedly sustained only in the October incident.  This is important because, as discussed below, while Plaintiff exhausted his administrative remedies as to the July 2021 incident, he *did not* exhaust his administrative remedies as to the October 2021 incident, and those remedies were available to him.

**A. The July 2021 Incident.**

In support of their motion, Defendants submit the affidavit of Lawanda Sanders-Williams, an Operation Analyst I, employed by the FDOC. ECF Doc. 22-1. According to Ms. Sanders-Williams, a review of FDOC records show that Plaintiff did not file any grievance appeals between July 2021 and December 2021. *Id.*

In his response, Plaintiff submits what appears to be two formal grievances he submitted relating to a July 21, 2021[1] use of force incident. The first grievance was submitted on July 24, 2021. ECF Doc. 24 at 3. Neither party has provided the Court with the response to that grievance. Regardless, on July 27, Plaintiff submitted a second formal grievance, also about the July 21 use of force incident. *Id.* at 2. That grievance was approved. Plaintiff is not required to appeal or take further action on his grievance once it has been approved in order to exhaust administrative remedies. *See Fulmore v. Leigh*, 2014 WL 2441864, at *7 (M.D. Fla. May 30, 2014). Thus, Plaintiff has fully exhausted the July use of force incident. As discussed below, however, Plaintiff will need to amend his complaint if he wants to proceed on that incident.

---

[1] Although the complaint references a July 19, 2021 incident, the Court will give Plaintiff the benefit of the doubt and assume the July 21 incident referenced in the grievance is the same July incident referenced in the complaint.

Case No. 3:21cv3547-MCR-HTC

## B. The October 2021 Incident.

In the complaint, Plaintiff does not explicitly state he did not file a grievance related to the October incident. However, the Court presumes as much as Plaintiff alleges the grievance procedures were unavailable to him because Defendants threatened him with reprisal if he submitted any grievances or appeals. He also alleges that even if he filed a grievance, it would have been discarded as contraband. Moreover, Plaintiff's response is silent as to the October incident. Thus, as an initial matter, the Court finds no grievance was filed for the October incident and must decide whether, as Plaintiff alleges, the grievance procedure was unavailable.

A prisoner cannot be expected to exhaust remedies that are not available. As the Eleventh Circuit stated in *Turner*, "remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Turner*, 541 F.3d at 1084. A remedy is unavailable if: (1) the administrative remedy is "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use … [and] no ordinary prisoner can navigate it;" or (3) prison officials "thwart inmates from taking advantage of [a grievance process] through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 643, 644 (2016).

A threat of retaliation may render an administrative remedy unavailable if both of these conditions are met: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085. Plaintiff, however, has not met either condition here.

First, Plaintiff's allegation that he did not file a grievance in October because he "was threatened with reprisal" is purely conclusory and his claim that it would be discarded as contraband is speculative, at best. Plaintiff has not identified which of the Defendants threatened him, when those threats occurred, or even the nature of the threat. And he has not explained why his grievances would have been discarded as contraband. Plaintiff's "conclusory allegation that he failed to exhaust his remedies because of [fear of reprisal] does not come close to satisfying the *Turner* standard. He has not identified any actual threats of retaliation that deterred him from pursuing his grievance and that would deter an "inmate of ordinary firmness" from pursuing a remedy." *Williams v. Barrow,* 559 F. App'x 979, 988 (11th Cir. 2014).

Second, Plaintiff's allegations are undermined by the fact that he filed two formal grievances in July *and* filed the instant complaint in December, just two

months after the October incident. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("[Plaintiff's] history of filing grievances [is] evidence that the defendants did not make administrative remedies unavailable to him…"). Clearly, neither of the July grievances were discarded. To the contrary, the July grievance was approved. Also, it does not make sense that Plaintiff was too afraid to file a grievance in October, but felt comfortable filing a complaint against the Defendants in December. Notably, Plaintiff does not make any argument in his response regarding the failure to file a grievance for the October incident.

Thus, under the 2-step *Turner* analysis, the Court finds administrative remedies were available to Plaintiff and Plaintiff failed to exhaust them as it relates to the October incident.

## V. Conclusion

For the reasons set forth above, Plaintiff has not exhausted the October 12, 2021 incident and, therefore, cannot bring an Eighth Amendment claim based on that incident to this Court. The undersigned recommends the claims against Defendants arising out of the October 12, 2021 incident be dismissed.

Also, as set forth above, Plaintiff has exhausted his administrative remedies as to the July 2021 incident. Plaintiff's allegations as to that incident, however, are cursory and insufficient to state a claim. It is unclear, for example, whether anyone, other than Pugh, was involved with that incident or what Plaintiff's injuries were

from that incident. Given the lack of detail about that incident, it is also unclear whether Plaintiff seeks relief as to that incident or if the inclusion of that incident in the complaint was for background informational purposes only. Notably, while Plaintiff complains about a deformed pinky finger, he also states he is "initiating suit" for the October incident because that is when Plaintiff's finger was "re-snapped." ECF Doc. 1 at 5. Nonetheless, because Plaintiff is proceeding *pro se*, the Court will give Plaintiff an opportunity to file an amended complaint related solely to the July incident.

Accordingly, it is ORDERED:

1. If Plaintiff wants to pursue a claim related to the July 2021 incident in this action, he must, within **twenty-one (21) days** from this Order, submit an amended complaint including sufficient factual allegations regarding the incident to state a claim for relief.

2. The clerk shall send Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number and "Amended Complaint" should be written on the form.

And it is respectfully RECOMMENDED:

1. That Defendants' motion to dismiss, ECF Doc. 23, based on Plaintiff's failure to exhaust his administrative remedies, be GRANTED as to any claim arising out of the October 2021 incident.

Case No. 3:21cv3547-MCR-HTC

2. That Plaintiff's claims against all Defendants with respect to the October 2021 incident be DISMISSED WITHOUT PREJUDICE.

3. That this matter be remanded to the undersigned for further pretrial proceedings.

At Pensacola, Florida, this 8th day of June, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.