IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCUS R. DEAL
   *Plaintiff,*

Case No.: 3:21-CV-3547-MCR-HTC

v.

CHAD PUGH; CHRISTOPHER NICHOLAS;
RICHARD PRICE; AUSTIN ALLIGOOD;
EVAN MANNERS; ET AL.,
   *Defendant(s).*
_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

    Plaintiff Marcus R. Deal, proceeding *pro se* pursuant to Rule 56(b) *Fed.R.Civ.Pro.* and local Rule 56.1, Northern District of Florida, hereby moves to oppose Defendants Dkt. 48 motion for the entry of an order denying their request for summary judgment due to genuine issues of material facts in dispute and (b) Defendants are not entitled to a judgment as a matter of law. In support, Plaintiff thereof states as follows:

### SYNOPSIS STATEMENT OF FACTS:

    Plaintiff is currently a State of Florida prisoner currently confined at the Suwannee Correctional Institution, Live Oak, Florida and is proceeding on his Amended Civil Rights Complaint [Dkt. 29] against these Defendants. Therein he alleges that on July 21, 2021 he was previously confined at Santa Rosa Correctional Institution (herein after, 'Santa Rosa'), and while said Defendants were acting under the color of State law, they used excessive/unnecessary force upon Plaintiff without need, provokation, during

a forced cell extraction team. [*id*. pgs. 6 through 9]. For the excessive force alleged in violation of the Eighth Amendment, Plaintiff seeks compensatory, punitive damage, against each Defendant individualy and severally. [*id*. pg. 10] Though Plaintiff did not specify those are both herein.

## MEMORANDUM OF LAW

Plaintiff is a *pro se* litigant unexperienced and request that his *pro se* proceedings be liberally construed than those drafted by attorneys. See, *Boxer v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed. 2d 253 (2005); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008); *Douglar v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008); *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)

### I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008)(citing *Fed.R.Civ.P.* 56(c) and *Wilson v. B/E/ Aerospace, Inc.*,376 F.3d 1079, 1085 (11th Cir. 2004)). "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007)(citations omitted).

"When a moving party has discharged it's burden, the non-moving party must then 'go beyond the pleadings', and by it's own affidavits, or by 'depositions, answers to interrogatories, and admissions on file', designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th

Cir. 1995){2012 U.S. Dist. Lexis 4}(citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548) 3 *id*. At 1314.

## II. PLAINTIFF'S ALLEGATIONS OF DISPUTED FACTS

I hereby declare under penalty of purjury 28 U.S.C. §1746 that the following is true and correct:

Plaintiff alleges the following facts in his Amended Complaint. On 7/21/21, Defendants Sgt. Pugh, Sgt. Manners, C.O. Nicholas, C.O. Price, and C.O. Allie-good, were placed on a unlawful cell extraction team, in which L.T. Butler was present and ordered Plaintiff to submit to custodial restraints and unclothed strip search to which Plaintiff complied, and for no penological purpose ordered the cell door to be breached and the (5) Defendants above unlawfully entered the assigned cell C2116 -s and physically assaulted Plaintiff; thereby L.T. Butler instructed the cell door to be breached and have fun. Defendants above got into a line to block the camera, Plaintiff placed his hands in the air so the camera can clearly view at that time Plaintiff laid on the cell floor on his stomach and face to the ground; the hand-held fixed video camcorder will depict that Sgt. Pugh hit Plaintiff with a closed fist while laying face down ready to be handcuffed. Instead, Defendant Sgt. Manners started slamming Plaintiff's head into the ground, blood came out of Plaintiff's face, while C.O. Allie-good started to hit Plaintiff as they pulled Plaintiff back into the cell to do more unlawful things to Plaintiff. C.O. Nicholas started hiting Plaintiff with the leg irons while Plaintiff was holding onto the side of the door to keep Plaintiff off camera attempting to hide the unlawful forced use of excessive force. While holding the cell door in fear of Plaintiff's life, L.T. Butler kicked Plaintiff in the face, C.O. Price hit Plaintiff in the eye. Once Plaintiff was on the ground, Plaintiff was placed in handcuffs and his left hand pinky was bent back and intentionally broken which is clearly displayed by x-rays. See Exhibit showing fractured fingers and swelling to facial area. Plaintiff was placed on a spit sheild over his face in

3

attempt to cover up his facial injuries.

Upon discovery, production of documents and tangible things, Defendants failed to produce the hand-held camcorder allegilly stating that the incident use of force did not transpire on 7/21/2021 and the video was neither produced.

The Defendants falsily allege Plaintiff had a 8 inch home made weapon, which is false; Plaintiff never had a weapon, Defendants falsily allege these facts. While laying on the ground Defendants C.O. Alli-good and Sgt. Manners climbed over the back of Officer Price and Sgt. Pugh to enter the cell to apply leg restraints on the Plaintiff. They then stated once the leg restraints were applied on the Plaintiff, they pulled Plaintiff back into the cell to give the other Defendant members space to enter the cell.

The cell extraction team consisted of (5) team members, (2) were on top of Plaintiff which were Sgt. Pugh and C.O. Price. The Defendants allege that they pinned Plaintiff to the floor to keep the Plaintiff from exiting the cell and then were pulled back into the cell to put leg iron restraints on by (2) more team members. Never did any Defendant, Sgt. Pugh or C.O. Price. Never once did they claim Plaintiff had a weapon on video/audio sound/view camcorder all incidents captured on video camcorder the one Defendant stated they had custody of that Sgt. William Walters provide but failed to produce during the discovery phase commiting a *Brady* violation.

## LAW AND CONCLUSIONS

The Eleventh Circuit has set forth the standard for an excessive use of force claim for an inmate. The use of force constitutes cruel and unusual punishments where it is applied 'maliously and sadistically to cause harm." *Skrtich*, 280 F.3d at 1300. Thus, in order to prevail on an excessive force claim a Plaintiff must demonstrate that those who used force against him acted with malious purpose. See *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). In addition, a Plaintiff must prove that a requite amount of force was used against him. *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000,

4

1117 L.Ed 2d 156/1992). "The Eighth Amendment prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of forces physical force, provided that the use of force is not the sort repugnant to the conscience of mankind." *Id.* (quotation omitted). In determining whether the amount of force used against an inmate was *de minimis*, a court may consider {2012 U.S. Dist. Lexis 33} the extent of the injuries suffered by the inmate. *Skrtich*, 280 F.3d at 1302. Nevertheless, a court ultimately should decide an excessive force claim "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. __,__, 130 S.Ct. 1175, 1177, 175 L.Ed. 2d 995 (2010). *Vicks v. Knight*, 380 Fed. Appx. 547, 851 (11th Cir. 2010)(*per curiam*)(not selected for publication in the Federal reporter). See *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178-79, 175 L.Ed. 2d 995, (2010)(*per curiam*)(finding "[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury"); *Logan v. Smith*, 439 Fed. Appx. 798, 2011 WL 3821 222, at *4 (11th Cir. 2011)(*per curiam*)(not selected for publication in the Federal reporter)(deciding the video and medical records evidence did not fully contradict the inmates allegations; disallowed plenary summary judgment on the excessive force claim, finding it inappropriate; and determining the evaluation of the evidence is a matter for a jury).

Recently, the Eleventh Circuit in *Hall v. Bennett*, No. 10-12869, 447 Fed. Appx. 921, 2011 U.S. App. Lexis. 23521, 2011 WL 5903541, at *2 (11th Cir. 2011){2012 U.S. Dist. Lexis 34}(*per curiam*)(not selected for publication in the Federal reporter)(citations omitted) being "mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury[,]" recognized that it was left with reviewing two competing, contadictory stories of what happened during an alleged assault by an officer on an inmate, and found the record presented a material issue of fact, precluding summary judgment.

In Plaintiff Deal's case that apparently there was no witnesses to the actual use of force, other than Defendants involved in the alleged use of excessive force and failure to protect. Additionally, Plaintiff was examined after the incident by a nurse. Evidence of abuse or trauma was noted by medical staff. Plaintiff presented medical complaints and he had visible physical injuries. X-rays were ordered and fracture and tissue swelling was found to Plaintiff's finger and tissue swelling and eyebrow cut and eye black, the spit shield was placed over Plaintiff's face to cover up his injuries. Thus, the medical assessments undertaken shortly after the alleged incident supports Plaintiff's allegations or significant and recently suffered injuries.

An officer present at a beating who fails to intervene may be held liable even though he did not administer any blows. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341-42 (11th Cir. 2007)(*per curiam*).

## [USE OF FORCE POLICY & PROCEDURE FLORIDA ADMINISTRATIVE CODE 33-602.210]

**1.) Definitions**

a.) Controlled Conditions- Circumstances in which the inmate upon whom force would be used is secured in a cell, shower room, recreation enclosure, isolation management room, or similarly secured setting, and is not causing or posing a threat, or any harm to themselves or others.

b.) Correctional Emergency Response Team- A team comprised of Departments staff trained in special tactics, including the use of deadly force, for the intervention and resolution of life-threatening crisis events.

c.) Crisis Intervention Techniques (CIT)- Methods used to offer immediate, short-term help to individuals who experience an event that produces emotional, mental, physical, or behavorial distress or problems.

d.) Crisis Intervention Techniques Training- This training assists staff in applying

non-force de-escalation techniques and strategies in the care and control of inmates suspected to be mentally ill.

e.) CS -Orthochlorobenzal Malononitrile or Orthochorobenzylidene Malonitrile-

An irritant agent that causes a burning sensation and tearing of the eyes, nasal discharge, and skin and upper respiratory irritation.

r.) OC -Oleoresin Capsicum- An inflammatory agent that causes tearing and involuntary closing of the eyes, nasal discharge, sneezing, disorientation, and the sensation of respiratory distress. OC is the primary chemical agent to be utilized for cell extractions and other in cell uses unless circumstances exists as described in this rule.

s.) Organized Use of Force- Any force that may be administered to control, escort, or geographically relocate an inmate, or to quell a disturbance in controlled conditions, when the immediate application is not necessary to prevent a hazard to any person.

x.) Reactionary Use of Force- Any force that must be administered quickly or immediately to compell the cessation of an inmates violence or resistance to a lawful order.

y.) Reasonable Force- Any force that is authorized, consistant with current training, and appropirate for the purpose of protecting oneself or another or gaining an inmate's complicance with a lawful order.

**2.) Authorization to Use Force**

a.) The following authorization to use force is subject to every other provision of this rule. Department staff, and staff of a Department contractor who are responsible for supervising inmates, are wuthorized to apply force on an inmate only when they reasonably believe it to be necessary to:

1.) Defend himself, herself, or others against imminent or already occuring unlawful force;

2.) Prevent a person from escaping from an institution when the staff member

reasonably believes that person is lawfully detained in such institution;

    3.) Gain custody of an escaped inmate;

    4.) Prevent damage to property;

    5.) Quell a disturbance;

    6.) Overcome an inmates physical resistance to a lawful order;

    7.) Prevent an inmate from inflicting any self-injury or from attempting to commit suicide; or

    8.) Restrain an inmate to permit the lawful administration of medical treatment under the supervision of a physician or his or her designee when treatment is necessary to protect the inmate from self-injury or death, or to protect the health of others.

    b.) FORCE is necessary ONLY when it would be unreasonable to pursue other means of attempting to achieve one of the objectives listed in paragraph (2)(a). FORCE IS AN OPTION OF LAST RESORT, TO BE USED "<u>ONLY</u>" AFTER NON FORCE OPTIONS HAVE BEEN ATTEMPTED AND WERE INEFFECTIVE or when the circumstances reasonably preclude attempting or continuing non-force alternatives to achieve one of the objectives listed in paragraph (2)(a).

    c.) Any force used must be reasonable, lawful, consistent with current training, and of the minumum amount necessary to achieve one or more of the objectives listed in paragraph (2)(a).

    **3.) Determination of Method of Force**

        If a Department staff member, Department Contractor staff member, or private Correctional Facility staff member determines that force should be used, he or she must determine which method of force to use or seek to use, the person pursuing the use of force should pursue any method of force that is lawful and that he or she reasonably

believes, based on training and experience, is consistent with Department rules and is most appropriate under the circumstances.

### 4.) USE OF FORCE- General and Miscellaneous Provisions

a.) Many of the guidelines and restrictions for the use of force set forth in this rule pertain only to a specific method of force, and sometimes to only the reationary or organized use of such a method. However, where applicable, the provisions of this subsection apply to the use of force generally.

b.) Miscellaneous Use of Force Protocol

1.) Any use of force shall cease whenever an inmate complies with lawful orders or ceases the behavior which justified the use of force.

4.) On-duty correctional officers who observe another officer engaging or attempting to engage in excessive use of forceagainst an inmate has a duty to intervene.

a.) When such intervention is reasonable based on the totality of the circumstances and the observing officer may intervene without jeopardizing his or her own health or safety, he/she will intervene to end the excessive use of force or attempted excessive use of force.

b.) When an officer's attempts to intervene fail to end the excessive use of force or attempted excessive use of force, the intervening officer will immediately notify the officer in charge and call for assistance from additional correctional officers.

### 5.) Hands-on Force

Shall NOT BE USED if injury is less likely to occur by using chemical agents, specialty impact munitions, or EIDS.

c.) Video Recording Protocol

9

1.) General.

a.) Video recording of all use of force incidents shall continue uninterrupted from commencement of recording until the situation is stable and under control and the inmate is placed in a secure cell or transport vehicle for transfer.

b.) The camera operator shall, to the best of his or her ability, ensure that all staff actively involved in any use of force and captured within the view finder of the camera is identified by rank/title and name.

2.) Reactionary Use of Force

a.) A camera operator shall commence recording all reactionary use of force incidents upon arrival at the scene as soon as possible. At a minimum, the camera operator shall verbally identify himself or herself and state the date, time, and location of the incident when commencing recording.

b.) Once the camera operator and shift supervisor arrive on the scene of a reactionary use of force, the shift supervisor, upon assessing the situation and being properly breifed, shall make a brief statement noting the reason(s) for the use of force. This shall be prior to the conclusion of recording and must include:

(I.) The Rank/Title and name of staff involved in the use of force,

(II.) The Rank/Title and name of any staff who were present, but not involved in the use of force,

(III.) The name and DC number of the inmate(s) involved,

(IV) The type and amount of force used,

(V) Any other pertinent information that he or she deems relevant.

Plaintiff asserts none of these policies, procedures, protocols were followed. Plaintiff contends that Defendants were malious and sadistically, willfully and with wanton disregard disobeyed policy and procedure, thereby utilizing hands on use of

10

force instead of chemical agents according to policy and procedure.

## EXCESSIVE/MISUSE OF FORCE STANDARD OF REVIEW

Excessive or unnecessary force by staff prison officials violates the Constitution, and may be remedied by damages. See: *Wright v. Sheppard*, 919 F.2d 665, 669-73 (11th Cir. 1990)

### A. The Constitutional Standards

Convicted prisoners are prohibited from misuse of force by the cruel and unusual punishments clause of the Eighth Amendment. The Supreme Court has held that "whenever prison officials stand accused of using excessive physical force in violation of the cruel and unusual punishments clause, the core judicial inquiry is... whether force was applied in a good faith effort to maintian or restore discipline, or maliously and sadistically to cause harm. See: *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995 (1992); accord, *Wilkins v. Gaddy* __U.S.__, 130 S.Ct. 1175, 1178 (2010)(*per curiam*); See *Baskerville v. Mulvaney*, 411 F.3d 45, 47-48 (2nd Cir. 2005)(quoting and discussing jury instuctions); *Johnson v. Breeden*, 280 F.3d 1308, 1313-16 (11th Cir. 2002)(same).

In deciding whether force was used "maliously and sadistically", the extent of injury inflicted is "one factor", and "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson v. McMillan*, 503 U.S. at 7; accord, *Wilkins v. Gaddy*, 130 S.Ct. At 1178-79; *Wright v. Goord*, 554 F.3d 255, 269 (2d Cir. 2009).

Other factors that the Court said may be relevant are "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, supra).

The "malicious and sadistic standard applies to the actions of staff who are directly using force. *Hudson*, 503 at 7-8 (standard applies "whenever prison officials stand accused of using excessive physical force in violation of the cruel and unusual punishments clause")(emphasis supplied).

The deliberate indifference standard applies to staff members who stand by and do not intervene in an illegal beating, and to claims of inadequate policy, supervision, training or control by supervisors or local governments.

### B. Applying the Standards

There are several factors that arise in the use of force case at hand:

(1.) Amount of Force

There is no fixed line for how much force violates the constitution; it depends on all of the circumstances. "When prison officials maliously and sadistically use force to cause harm, contemporary standards of decency always are violated".

Plaintiff asserts that hands on force was not necessary and Defendants resorted to hands on force automatically instead of following policy and procedures and first utilizing chemical agents. The force used was maliously and sadistically to cause harm, Defendants bent and fractured Plaintiff's fingers while restrained and handcuffs and slammed his face into the floor which was solely done to cause harm and not in a good faith effort to maintian discipline or restore order.

(2.) Injury

Prisoners need not prove a serious or significant injury to establish excessive force. In Eighth Amendment cases, the degree of injury is "relevant to the ... inquiry but does not end it," *Hudson v. McMillian*, 503 U.S. at 7; accord, *McHenry v. Chadwick*, 896 F.2d 184, 187 (6th Cir. 1990).

The extent of injury is therefore "but one of the factors to be considered. Even if

12

the injuries suffered 'were not permanent or severe', a Plaintiff may still recover if 'the force used was unreasonable and excessive." *Brooks v. Kyler*, 204 F.3d 102, 108-09 (3d Cir. 2000)(jury could find Eighth Amendment violation based on superficial lacerations and abrasions; objective evidence of any particular degree of injury is not required); *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)(minor injuries are actionable when force is completely unjustified); *Gray v. Spillman*, 925 F.2d 90, 93 (4th Cir. 1991)(extent of injuries is relevant to damages but is not a prerequisite to suit).

Plaintiff's head was slammed into the floor causing right eyebrow laceration, swelling on left side, right side of face and a fractured hand as a result of malious and sadistic force used.

3.) Malice

The Eighth Amendment standard is "whether force was applied in a good faith effort to maintain or restore discipline, or maliously and sadistically to cause harm", is the primary question.

Plaintiff contends that malice can be clearly shown by Defendants immediately using hands on use of force cell extraction rather than use of chemical agents.

Defendants utilization of past chemical agents ineffective is merely an excuse to justify and cover up a smoke screen used to attempt to justify violations of policy and procedure of hands on as a last resort when other means have failed. See generally 33-602.210 *Fla.Admin.Code, Rule* 33-602.210(5), which states "Hands-on force shall not be used if injury is less likely to occur by using chemical agents.

33-602.210(2)(b) [Authorization to Use Force]

… Force is necessary only when it would be unreasonable to pursue other means of attempting to achieve one of the objectives listed in paragraph (2)(a). **FORCE IS AN OPTION OF LAST RESORT, TO BE USED ONLY AFTER NON-FORCE OPTIONS** HAVE BEEN ATTEMPTED AND WERE INEFFECTIVE.

13

Defendants rely on the hands on forced cell extraction which caused permanent damage as their excuse for not first applying chemical agents in which they reference to chemical agents happen months, even years prior to this incident of force to justify forced cell extraction in which the video to this incident is missing and was not produced during discovery, in which the incident happened on 7/21/2021 @ 8:30 a.m. and requested during discovery of production of documents and tangible things. Defendants committed a *Brady* violation when they failed to produce handheld use of force camera for inspection and review which will depict that force was not justified and while in handcuffs Plaintiffs head was slammed into the ground and his fingers bent back causing fractures to bones which force was malious and sadistic and not in a good faith effort rendering summary judgment to be denied due to geniune material facts in dispute.

(4.) Justification for Use of Force

Force may be used to restore or maintain order in a jail or prison-- not to punish prisoners or to retaliate against them. *Jackson v. Bishop*, 404 F.2d 571, 579-81 (8th Cir. 1968)(holding corporal punishments unconstitutional); *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002)("It is not Constitutionally permissible for officers to administer a beating as punishment for a prisoners past misconduct.")

## SUMMARY JUDGMENT

Summary judgment is a procedure designed to dispose of cases without trial. Where there is no factual disputes that are required a trial. One Court has called it "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept it's version of the events." *Schacht v. Wisconsin Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999); See *Celotex Corp., v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)(party must submit evidence

supporting each element of it's case to avoid summary judgment).

Summary judgment is to be granted only if the record before the Court shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Rule 56(c)(2), *Fed.R.Civ.P.* If there is no genuine factual issue, summary judgment does not violate the right to a jury trial, since the purpose of trials, is only to decide factual issues. See *Plaisance v. Phelps*, 845 F.2d 107, 108 (5th Cir. 1988).

If the Court finds that there is a genuine issue of material fact, then there will be a trial to determine the facts such have is the case.

A "material" fact is one that "might affect the outcome of the suit under the governing law... factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).

A "genuine" issue exists "if evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

In determining whether there is a genuine issue of material fact, the Court must view all facts and make all reasonable inferences in favor of the nonmoving party (i.e., if defendants move for summary judgment, the court should accept your (Plaintiff's) version of the facts, and vice versa). *Matushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986); See *Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir. 2001)(where record showed history of misconduct by officer, a court should not have inferred on summary judgment that higher officials did not know about it on their motion for summary judgment); *Fischl v. Armitage*, 128 F.3d 50, 56-59 (2d Cir. 1997)(showing proper and improper inferences from record in prisoner assault case).

Circumstantial evidence can create an issue of material fact barring summary judgment. *Fischl v. Armitage*, 128 F.3d at 56 as can important unanswered questions in

15

the moving party's factual claims such as production of video of use of force, and why the forced cell extraction hands on force rather than other options such as use of chemical agents, and why they slammed head into the ground and bent and fractured fingers/hand is all geniune issues of material facts, circumstantial evidence.

The Court is not supposed to decide disputed facts or access credibility on a summary judgement motion. *Masson v. New Yorker Magizine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419 (1991); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

Thus, a Court may not grant summary judgment because it thinks the prisoner's assertions about an incident or an injury are inconsistent with prison medical records. *Scott v. Coughlin*, 344 F.3d 282, 289-90 (2d Cir. 2003)(Court should not have granted summary judgment based on perceived disparity between Plaintiff's sworn statements and medical records, doing so was an impermissible credibility determination and weighing of contradictory evidence).

The Court is suppose to decide a summary judgment motion based on facts that are properly put before it. This usually means facts stated on personal knowledge in sworn affidavits or declaration under penalty of purjury. "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidences, and show that the affiant is competent to testify on the matters stated." Rule 56(e)(1) *Fed.R.Civ.P.*

Documentary evidence such as use of force hand held video may also be used to support or oppose a motion for summary judgment as long as it would be admissible at trial under the rules of evidence. 56(e)(1) *Fed.R.Civ.P.*; *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000).

## CONCLUSION

For the following reasons and factual genuine material facts in dispute Plaintiff

16

request that Defendants Motion for Summary Judgment be denied.

Respectfully submitted,

S/ *[signature]*

Marcus R. Deal, FDC#V26423

## CERTIFICATE OF SERVICE

I, Marcus R. Deal, hereby certify that a true and correct copy the foregoing Opposition to Defendants Motion was sent via U.S. Postal to the Honorable United States District Court, Northern District Court of Florida, Pensacola Division and to Defendants via Assistant Attorney General, PL-01, The Capitol, Tallahassee, FL on this 16 day of DEC, 2022.

Respectfully submitted,

S/ *[signature]*

Marcus R. Deal, FDC#V26423
Suwannee Correct. Inst.
5964 U.S Highway 90
Live Oak, FL 32060

Marcus Deal V26423
Sawanee C.I.
5964 US Highway 90
Live Oak FLA, 32060

US District Court
1 North Palafox Street
Pensacola FLA, 32502

DEC 22 2022

Mailed From State
Correctional
Institution
Suwanee C.I.



DEAL 126423
S.C.I.
highway 90
FLA, 32060

US DISTRICT COURT
1 North Palafox Street
Pensacola FLA, 32502

DEC 22 2022

Mailed From State Correctional Institution Suwanee C.I.



ZIP 32060
02 4W
0000380318

US POSTAGE **PITNEY BOWES**
$ 002.64°
DEC 19 2022