UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCUS R. DEAL,

    Plaintiff,

v.                                           Case No. 3:21cv3547-MCR-HTC

G. PUGH, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

Plaintiff Marcus R. Deal, proceeding *pro se* and *in forma pauperis*, files this civil rights action against six (6) officers of the Florida Department of Corrections ("FDOC") for excessive use of force arising out of a cell extraction occurring while Plaintiff was at Santa Rosa Correctional Institution ("SRCI").[1]  Before the Court is Defendants' motion for summary judgment, ECF Doc. 48, which Plaintiff opposes, ECF Docs. 52–54.  Upon consideration, the undersigned recommends Defendants' motion be DENIED.

---

[1] Plaintiff is currently incarcerated at Suwanee Correctional Institution.

I. **SUMMARY JUDGMENT STANDARD**

To prevail on their motion for summary judgment, Defendants must show Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248 (1986) (emphases omitted). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

II. **EIGHTH AMENDMENT CLAIM**

Defendants argue they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because they used only the amount of force reasonably necessary to restrain Plaintiff and maintain control. Alternatively, if summary judgment is not granted, Defendants argue they are entitled to summary judgment on Plaintiff's claim for compensatory damages because his injuries were *de minimis*.

As discussed in more detail below, Plaintiff's and Defendants' version of events tell two wholly different stories. Plaintiff disputes not only the quantum of force used but also whether any use of force was reasonably necessary. Indeed, per Plaintiff's account, he was compliant and willfully submitted to all orders but was nonetheless battered without provocation or justifiable purpose. While Plaintiff may ultimately not be able to succeed on his claims, these factual disputes make summary judgment improper.

A. **Plaintiff's Version of Events**[2]

Plaintiff's version of events is taken from his sworn amended complaint, ECF Doc. 29, declaration contained in the written opposition to Defendants' motion, ECF Doc. 52, sworn affidavit, ECF Doc. 53, and sworn declaration, ECF Doc. 54.

During the morning hours of July 21, 2021,[3] Defendant Lieutenant Butler and a mental health employee came to Plaintiff's cell to ask if he was going to move cells and Plaintiff said "yes." ECF Doc. 29 at 6. Lt. Butler ordered Plaintiff to submit to custodial restraints and an unclothed strip search and Plaintiff agreed. Nonetheless, five minutes later, the cell extraction team, consisting of Defendants

---

[2] Although Plaintiff also complained about an excessive force incident occurring on October 12, 2021, that claim was dismissed for failure to exhaust. ECF Doc. 25.
[3] Plaintiff initially alleged in the amended complaint that the use of force incident occurred around 10:00 a.m. However, the incident reports submitted by Plaintiff show that it occurred around 8:30 a.m. This discrepancy is immaterial to the Court's summary judgment determination.

Case No. 3:21cv3547-MCR-HTC

Officer Pugh, Sgt. Manners, Officer Nicholas, Officer Price, and Officer Alligood, arrived at Plaintiff's cell.

Officer Pugh ordered Plaintiff to put his hand through the "feeding box," which Plaintiff did. *Id.* Sgt. Manners told Plaintiff the officers were going to "beat your ass monkey." *Id.* Lt. Butler then told the extraction team to go on in and "have fun." ECF Doc. 52 at 3. Upon breaching the cell door, Defendants got in the way of the camera and Officer Pugh hit Plaintiff with a closed fist. Plaintiff pushed himself out of the cell to try to avoid injury and laid on the ground ready to be handcuffed when Sgt. Manners slammed Plaintiff's head into the ground, resulting in blood escaping the side of his eye.

Officer Alligood also started hitting Plaintiff and pulling him back into his cell to get Plaintiff out of the camera's view. Officer Nicholas began hitting Plaintiff with leg irons. While Plaintiff was still holding on to the side door, Lt. Butler kicked Plaintiff on the right side of his head, causing blood to come out of his nose and mouth, and Officer Price hit Plaintiff in the right eye with a restraint, causing his face to bleed and drip onto the floor. Officer Alligood then hit Plaintiff in the back of the head, causing his neck to bleed.

Next, Officer Pugh grabbed Plaintiff's left hand, while Plaintiff was still in handcuffs. Plaintiff cried for help. Lt. Butler told the other officers to "make it look good" and "to show the others how they play at Santa Rosa." ECF Doc. 29 at 8.

Sgt. Manners told Officer Pugh to bend Plaintiff's fingers back until they heard a popping sound. When Plaintiff's finger did not immediately break, Sgt. Manners became unhappy and started hitting Plaintiff in the head until he could not see out of his right eye.

Officer Nicholas then put his hands around Plaintiff's neck, resulting in Plaintiff going in and out of consciousness. Finally, Officer Price hit Plaintiff in the face until Plaintiff went to sleep. Plaintiff was in pain and could not obey Defendants' orders to stand up, resulting in Defendants kicking him. Lt. Butler told Defendants to place a spit shield on Plaintiff, so the camera would not see the injuries he had endured.

As a result of the use of force, Plaintiff suffered swelling to his face, a laceration, as well as a fractured hand.

### B. The Defendants' Version of Events

Defendants' version of events is taken from the use of force reports, incident report, and a disciplinary report finding Plaintiff guilty of possession of a weapon on the date of the incident.[4]

---

[4] Defendants have not submitted a custodial affidavit to authenticate the reports. The Court will nonetheless consider them as summary judgment evidence because Plaintiff does not contend the documents themselves are not authentic. He only disputes the veracity of the statements contained in the documents.

Case No. 3:21cv3547-MCR-HTC

On July 21, 2021, Lt. Butler contacted the Warden and advised him that Plaintiff was being disruptive and refusing to submit to an unclothed search, to wrist restraints, or to exit his cell for reassignment. Plaintiff was refusing to comply with all given orders. Lt. Butler also reported that the crisis intervention team had been unsuccessful. Thus, because Plaintiff had a history of chemical agents being ineffective, Warden Leavins authorized the use of forced cell extraction.

Once the cell extraction team arrived at the cell, Sergeant Walters initiated video recording procedures and each of the team members introduced themselves and their responsibilities.[5] Defendant Pugh was in the number one position, Defendant Price was in the number two position, Officer Alligood was in the number three position, Sgt. Manners was in the number four position, and Officer Nicholas was in the number 5 position. At approximately 8:30 a.m., Lieutenant Butler gave Plaintiff a final order to submit to restraints and leave his cell but Plaintiff refused. At approximately 8:31 a.m., the cell extraction team, consisting of Defendants Pugh, Price, Alligood, Manners, and Nicholas, breached Plaintiff's cell.

Upon entering the cell, Officer Pugh used a non-electric concave Plexiglas shield and, along with Officer Price, used his body weight to pin Plaintiff in a prone position on the ground and keep Plaintiff from exiting the cell. Officers Alligood

---

[5] Although it appears there was video footage of the use of force incident, Defendants did not submit any video footage to the Court.

and Sgt. Manners climbed over Officers Price and Pugh and utilized downward pressure on Plaintiff's lower extremities to apply leg restraints on Plaintiff. Once the leg restraints were secured on Plaintiff, Officer Alligood and Sgt. Manners pulled Plaintiff into the cell so the other team members had room to enter the cell.

Once the officers were out of the cell's doorway, Officer Nicholas announced that he saw what appeared to be a weapon in the Plaintiff's possession. At that point, Plaintiff threw the weapon underneath the cell's toilet. Defendants Price, Nicholas, and Pugh used pulling force and pain compliance techniques to force the Plaintiff's arms behind his back so wrist restraints could be secured. Once all restraints were applied to Plaintiff, all force ceased.[6]

Plaintiff was examined by medical staff after the use of force incident and was noted as having a laceration to his right eyebrow and swelling on his right eye. Medical records note, however, that no other injuries can thoroughly be assessed because of security risks and that the assessment was done cell side. A follow-up examination conducted a couple of hours later also noted swelling to the right and left sides of Plaintiff's face.

---

[6] The FDOC incident report, ECF Doc. 48-1 at 1, differs slightly from the Defendants' use of force reports. The incident report identifies Officers Price and Alligood as applying wrist restraints and Officers Nicholas and Sgt. Manners as applying the leg restraints. This discrepancy is immaterial for purposes of the Court's summary judgment determination.

Case No. 3:21cv3547-MCR-HTC

Following the incident, Plaintiff was found guilty of having possessed a homemade 8" Plexiglass weapon. He was placed in disciplinary confinement for 60 days.

### C. Legal Analysis

The "core judicial inquiry" for an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "This standard requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Hudson*, 503 U.S. at 7).

For the subjective element, the Eleventh Circuit identified five factors set out by the Supreme Court in *Whitley v. Albers*, 475 U.S. 312 (2010) to evaluate whether force was applied maliciously or sadistically: (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting *Whitley*, 475 U.S. at 321). For the

objective element, courts focus on "whether the official's actions were harmful enough or sufficiently serious to violate the Constitution." *Sconiers*, 946 F.3d at 1265.

Applying the *Whitley* factors here, the undersigned cannot say, as a matter of law, that no excessive force was used. Accepting Plaintiff's version of facts as true, a reasonable jury could find Defendants used excessive force against Plaintiff.

From the outset, Plaintiff asserts Defendants had no legitimate reason to use force against him as he was fully compliant. Plaintiff contends that he agreed to comply with an unclothed search, to submit to restraints, and to exit his cell. Thus, based on Plaintiff's sworn declarations, there was no reason for the cell extraction team to be called or to have entered the cell. Also, although Defendants contend the use of force was necessary because chemical agents had not worked on Plaintiff in the past, Plaintiff contends that statement was only an excuse to use excessive force.

In addition to the discrepancies regarding the *need* to use force, the parties' accounts as to the *amount* of force used are also at odds. First, Defendants claim that upon entering the cell, Pugh used a Plexiglass shield, his body weight, and some "pressure" to pin Plaintiff to the ground, so that he could be placed in leg restraints. According to Plaintiff, however, Defendants came into the cell intent on beating him and Pugh punched Plaintiff, with a closed fist, as soon as he entered the cell. Significantly, Plaintiff also contends that, after he voluntarily laid on the ground

outside the cell to submit to handcuffs, Sgt. Manners slammed his head into the floor with such force that blood shot out of the side of his eye. After that, Plaintiff maintains, he was pulled back into his cell where Officers Alligood, Nicholas, Price, and Butler continued to strike him in the leg, head, and eyes, and that he was pulled into the cell only so Defendants could assault him out of the camera's view.

Additionally, while Defendants contend they used "pulling force and pain compliance techniques" to bring Plaintiff's hands behind his back because he had a weapon, Plaintiff denies having had any weapon. Plaintiff further swears under oath that he appealed the disciplinary report and the findings and recommendations were dismissed.

Finally, while Defendants minimize Plaintiff's injuries to a laceration and swelling, Plaintiff contends that Defendants also fractured his hand. Regardless, while an insignificant injury tends toward a finding that the force used was *de minimis*, the lack of a significant injury is not grounds for dismissal. *See Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (noting that while "[t]he extent of injury may also provide some indication of the amount of force applied," "[i]jury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts"). Thus, Plaintiff's injuries do not militate against a finding that excessive force was used.

The disputes of fact presented here make this case different from the cases relied upon by Defendants in their motion. For example, in *Miles v. Jackson,* 757 F. App'x 828 (11th Cir. 2018), the prisoner conceded in his deposition he failed to comply with the defendant's orders and evaded defendant's attempts to get him to comply. *Id.* at 830. *Reed v. Mitchem*, 707 F. App'x 617 (11th Cir. 2017), is also inapplicable because, there, the case went to a bench trial. Likewise, neither *Smith v. Sec'y, Dep't of Corrections*, 524 F. App'x 511 (11th Cir. 2013), nor *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014) are applicable. In *Smith*, the court found a lack of serious injury where the undisputed evidence showed very minimal swelling around plaintiff's left eye, and in *Howard*, the court found the undisputed evidence showed only a superficial abrasion on plaintiff's neck. *Smith*, 524 F. App'x at 512–14; *Howard*, 572 F. App'x at 695.

Moreover, in *Howard*, the court also found plaintiff's "accounting of the incident to be blatantly contradicted by the record, so that no reasonable jury could have believed it." *Howard*, 572 F. App'x at 695. Here, however, Defendants have not provided such blatantly contradictory evidence. Defendants have not provided a video that contradicts Plaintiff's version of events, even though it appears one may exist. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding video evidence blatantly contradicted plaintiff's allegations). Instead, Defendants simply rely on statements they made in their use of force and incident reports. Those statements

when compared to Plaintiff's sworn statements simply present "'a classic swearing match, which is the stuff of which jury trials are made.'" *See Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019).

## III. COMPENSATORY DAMAGES

Defendants also argue that because the injuries were *de minimis*, even if there was excessive force, Plaintiff cannot recover compensatory damages. As the Eleventh Circuit clarified in *Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021) (en banc), while a prisoner may be able to recover punitive damages even in the absence of a more than *de minimis* physical injury, the prisoner cannot recover compensatory damages. *Id.* at 1361. Here, a reasonable jury could find that Plaintiff's injuries were more than *de minimis*.

While the Court agrees that a laceration and facial swelling, alone, generally do not constitute a more than *de minimis* injury, as stated above, Plaintiff has also alleged the bones in his hand were fractured – an injury which could be more than *de minimis*. *See Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (finding a laceration and swelling to the face plus other minor abrasions to be *de minimis* but noting "[i]t is important that [plaintiff] suffered no broken bones or additional injuries"). In support of this allegation, Plaintiff relies on X-ray results showing same. While the X-ray results are from May and June of 2022, Defendants have not presented any evidence to refute the existence of fractures or to show that the

fractures were not caused by the July 2021 incident. Defendants, in fact, do not address Plaintiff's claim that his hand was fractured at all. Thus, while Plaintiff may ultimately be unsuccessful in proving that the fractures resulted from the July incident, bone fractures are a more than *de minimis* injury and, if proven, would entitle Plaintiff to compensatory damages. *See Hoffmann v. McCray*, No. 3:17-CV-361-J-39JRK, 2019 WL 3413536, at *8 (M.D. Fla. July 29, 2019) ("courts have recognized that broken bones . . . may constitute more than *de minimis* injuries").

Accordingly, it is respectfully RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF Doc. 48, be DENIED.

2. This matter be referred back to the undersigned to prepare the case for trial.

At Pensacola, Florida, this 18th day of January, 2023.

/s/ *Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.